UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

      Plaintiff,

      -v-

ZAHID BAIG,

      Defendant.

-------------------------------------------------------X

FEUERSTEIN, S., Senior District Judge:

**FILED**
**CLERK**

8/11/2020 2:54 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

Case No. 13-cr-0351 (SFJ)
**Order Denying Petition for**
**Writ of *Coram Nobis***

I.    <u>Introduction</u>

    Defendant Zahid Baig (hereafter, "Zahid") petitions this Court for a writ of *coram nobis*

seeking to vacate his conviction on the grounds that the restitution order imposed was

unsupported by law and that the Government withheld exculpatory evidence by failing to

disclose a lack of proof that Zahid participated in the charged conspiracy during the applicable

limitations period.  (*See* ECF No. 348; hereafter, the "Petition".)  The Government opposes

Zahid's Petition arguing that he waived his right to collaterally challenge his conviction and

sentence and, alternatively, that there are no compelling circumstances warranting the granting of

the Petition.  (*See* ECF No. 367; hereafter, the "Opposition" or "Opp'n".)  For the reasons that

follow, the Petition is denied.

II.    <u>Relevant Background</u>

    *A. Factual Background[1]*

    Between January 2000 and June 2013, Zahid and others directed and controlled the

employment of more than one hundred illegal aliens at over a dozen 7-Eleven Inc. stores, which

---

[1]  The Court assumes the parties' familiarity with the underlying facts of this case and provides
the following summary for the reader's convenience.

were owned or controlled by Zahid's brother, Farrukh Baig ("Farrukh") and located in New York and Virginia (hereafter, the "Farrukh Stores"[2]).  Farrukh was the organizer and leader of the scheme involving the employment of illegal aliens (hereafter, the "Farrukh-Led Scheme"). As a manager of several Farrukh Stores during this time period, Zahid: answered only to Farrukh or codefendant Malik Yousaf; participated in the employment of illegal aliens; and, was fully aware of the scope of the scheme.

### B.  Procedural Background

On June 12, 2013, a grand jury indicted Zahid, Farrukh, Farrukh's wife, Shannawaz[3] Baig (Zahid's and Farrukh's brother), as well as Malik Yosaf, Ramon Nanas and Tariz Rana, on various charges related to the Farrukh-Led Scheme and carried out at the Farrukh Stores, including, *inter alia*, "Conspiracy to Conceal and Harbor Illegal Aliens for Financial Gain" (Count II) and "Concealment and Harboring of Illegal Aliens for Financial Gains" (Count III). (*See* Indictment, ECF No. 1.)  Based upon the Indictment, on June 17, 2013, Zahid and the other defendants were arrested.

On September 22, 2014, Zahid entered into a plea agreement with the Government. Among other things, Zahid agreed to plead guilty to Count II of the Indictment (Plea Agreement (*see* ECF No. 367-2), ¶1) and "that restitution, in an amount of $2,621,111,97, should be ordered by the Court to pay the back wages of the employees described in the Indictment."  (*See id.* at ¶1(e).)  Zahid further agreed to waive certain rights, *to wit*:

> The *defendant agrees not to* file an appeal or *otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other*

---

[2]  The Farrukh Stores are those identified in the Indictment.  (*See* ECF No. 1, ¶2 (identifying the 7-Eleven Stores involved in the charged conspiracy).)

[3]  In the record, the spelling of Shannawaz Baig's first name varies; the Court employs the spelling of his name as contained in the Indictment.

> provision, the conviction or sentence in the event that the Court
> imposes a term of imprisonment of 24 months or lower.  This
> waiver is binding without regard to the sentencing analysis used by
> the Court.  The defendant waives all defenses based on the statute
> of limitations and venue with respect to any prosecution that is not
> time-barred on the date that this agreement is signed in the event
> that (a) the defendant's conviction is later vacated for any reason,
> (b) the defendant violates this agreement, or (c) the defendant's
> plea is later withdrawn.  The defendant waives any right to
> additional disclosure from the government in connection with the
> guilty plea . . . .  Nevertheless, the defendant affirms that he wants
> to plead guilty and to waive his right to appeal as set forth at the
> beginning of this paragraph, even if the consequence is the
> defendant's automatic removal from the United States.

(Id. at ¶4 (emphasis added).)  At the conclusion of the Plea Agreement were the statements, "I

have read the entire agreement and discussed it with my attorney.  I understand all of its terms

and am entering into it knowingly and voluntarily," followed by Zahid's signature and that of his

counsel, indicating his approval.  (Id. at 15.)  On the same day, Zahid consented to the Magistrate

Judge accepting his plea.  (See Sept. 22, 2014 Plea Hr'g Tr. (ECF No. 158; hereafter, "Plea Tr.")

4:1-6.)  During the plea hearing, Magistrate Judge Locke asked Zahid, inter alia, whether he had

read the Plea Agreement and discussed it with his attorney, to which Zahid affirmatively replied

(see id. at 12:14-16.)  The Government also highlighted that, as part of the Plea Agreement,

Zahid was agreeing to restitution of $2,621,111,97 (see id. at 12:22-13:1).  When asked if he was

aware of the elements of the crime to which he was pleading guilty, Zahid confirmed that he

was.  (See id. at 13:7-12; see also id. at 14:2-4.)  Zahid further confirmed that he did not have

any questions he wished to raise regarding "the charges, [his] rights, or anything else related to

this matter[.]"  (Id. at 16:11-14.)  Thereafter, of his free will, Zahid voluntarily plead guilty to

Count II of the Indictment (see id. at 17:12-17), specifically confessing that "[b]etween 2000 and

2013 in Suffolk County and Virginia, [he] entered into an agreement with others to harbor and

employ aliens at 7-Eleven Store[s]" and that he and the others "profited from that scheme."  (Id.

at 18:10-13.)  The Magistrate Judge recommended that the undersigned accept Zahid's guilty

plea.  (*See id.* at 18:7-9; *see also* ECF No. 135.)

 The Probation Department prepared a presentencing report ("PSR")(*see* ECF No. 177)

prior to Zahid's sentencing, stating, *inter alia*, Zahid agreed to pay restitution.  (*See* PSR, ¶26;

*see also id.* at ¶111 (recognizing restitution "not statutorily required" but that Zahid "agreed to

pay restitution").)  It further reported that Zahid "did not supervise other criminal participants,"

but his "involvement in the instant offense was significant, as he managed a number of the 7-

Eleven stores." (*Id.* at ¶29).  In his Sentencing Memorandum, Zahid did not address restitution or

raise any objections based upon the Government's alleged failure to comply with its *Brady*

disclosure obligations prior to Zahid entering the Plea Agreement or pleading guilty.  (*See* ECF

No. 199.)  Rather, Zahid acknowledged that the Chesapeake 7-Eleven store referenced in the

Indictment, *i.e.*, Farrukh Store No. 33718 (*see* Indictment, ¶2), is the store where he worked "up

to the time of his arrest on this matter."  (*Id.* at 2; *see also id.* at 3 (noting the Government

"concedes that Zahid Baig did not maintain a supervisory role in the criminal activity" but

admitting Zahid "was a participant and for that must be held responsible"); *see also id.* at 4

(requesting Zahid be sentenced to time served).)  In its sentencing memorandum, the

Government stated that Zahid "was a full participant in this massive fraud," but acknowledged

his "role [wa]s very different from some of his codefendants" as he "did not have broad

supervisory authority over several stores" and "did not earn millions of dollars from this fraud."

(ECF No. 197 at 1; *see also id.* at 4 (Part II(A)).)  The Government requested the "Court issue a

restitution order of $1,253,343.48" (*id.* at 6 (Part VIII)) and, in support of this requested amount,

attached a sealed appendix that identified the victims of the charged conspiracy and the amounts

due to them, which totaled $1,253,343.48.  (*See* ECF No. 197-1 (sealed); hereafter, "Appendix

A".)  Consistent with this request, in its addendum to its PSR, the Probation Department stated,

"[t]he Government also puts forth a new, more recently calculated restitution amount[,] . . .

$1,253,343.48," to which it had no objections.  (ECF No. 200 at 1.)

On March 25, 2015, Zahid was sentenced to time served, three years of supervised

release and, as an additional term of his supervised release, the imposition of restitution, which

was to "be distributed to the victims as set forth in the sealed Appendix A associated with this

order," *i.e.*, the exact Appendix A attached to the Government's sentencing memorandum and

which was also attached to Zahid's Judgment.  (*See* ECF No. 207 (Mar. 25, 2015 Minute Entry);

ECF No. 214 (Judgment) at 4, ¶1, and 5; ECF No. 214-2 (Appendix A).)  Zahid did not appeal

his conviction or sentence.

### C.  Zahid's Coram Nobis Petition

On March 27, 2019, four years after his sentencing, Zahid filed the instant Petition

seeking a writ of *coram nobis* to vacate his conviction and "correct a 'compelling' error and

prevent a manifest injustice from occurring."  (Petition at 1.)  At its core, Zahid's Petition seeks

relief from the Restitution Order.

#### 1.  Zahid's Position[4]

Relying upon the Supreme Court's *Honeycutt* case, Zahid argues he "stands ordered to

pay restitution for conduct which does not subject him to liability under 18 U.S.C. § 3663A,"

---

[4]  Zahid asserts that his Petition "involves many of the same essential issues of undisputed facts
and the pertinent federal case law" as does the *coram nobis* petition of his brother Shannawaz.
(Petition at 6; *see also id.* at 5; *cf.*, ECF No. 334 (Shannawaz's *coram nobis* petition).)  Indeed,
from the context of Zahid's Petition, it appears Zahid would have this Court conflate his
Petitioner with that of Shannawaz.  The Court declines to do so; while the same law is applicable
to both petitions and the factual background of Zahid's and Shannawaz's cases are similar, that
similarity does not sufficiently extend to their pleas or sentencings.  Hence, the Court will
address the brothers' petitions separately.

*i.e.*, the Mandatory Victims Restitution Act ("MVRA").  (*Id.* (citing *Honeycutt v. United States*, __ U.S. __, 137 S. Ct. 1626 (2017)); *see also id.* at 5.)  He also argues that the Restitution Order "was clearly inappropriate" because of his "*de minimis* role in this alleged conspiracy" and that holding him "jointly and severally liable for this restitution is unconstitutional."  (*Id.* at 13.)  Finally, "in the interest of justice," Zahid requests an accounting of the payments received towards the Restitution Order to determine whether it "has been fully-satisfied over the last five (5) years or so."  (*Id.* at 10.)

Zahid further claims his conviction was obtained in violation of his Fifth Amendment due process rights because the Government "fail[ed] to turn over exculpatory *Brady* material it maintained in its possession."  (*Id.* at 1-2.)  Zahid appears to be advancing the notion that the Government withheld that it did not have records showing the use of false identification information at certain Farrukh Stores located in Virginia for the time period running from when Zahid moved to Virginia in 2007 to his arrest in June 2013.  (*See id.* at 10-11; *see also id.* at 12-13 (arguing "there are obvious issues with regard to how much involvement [Zahid] actually had in the alleged crime, and when his participation in such alleged crime had officially terminated" (citing *United States v. White*, 883 F.3d 983 (7th Cir. 2018)).)  Zahid further contends that he "never actually pled" to being involved in the conspiracy for that time period, *i.e.*, from 2007 to June 2013.  (*See id.* at 11.)

Zahid also challenges the forfeiture order to which he agreed (*see id.* at 6; *cf.*, Plea Agreement, ¶¶1(*l*); 6-11), but does not put forth a developed argument in support of that position.  Relatedly, to advance his argument that he continues to suffer legal consequences from his conviction, Zahid puts forth the Court's June 13, 2013 *Ex-Parte* Post-Indictment Restraining

Order ("Restraining Order")(*see* ECF No. 19), directed at the 7-Eleven Corporation regarding the Farrukh Stores, which he also requests be lifted.  (*See id.* at 6-10.)

2.  The Government's Position

The Government initially notes that Zahid "has waived any right to petition for relief," arguing that the "collateral review waiver in his plea agreement should be enforced" with this Petition being dismissed.  (Opp'n at 3-4.)  However, if the Court should review Zahid's claims, the Government contends Zahid is not entitled to *coram nobis* relief since he has failed to present any compelling circumstances warranting this extreme remedy.  (*See id.* at 4 (asserting the record demonstrates Zahid: "was fully aware of the factual and legal issues presented by the charges," "committed the crime of which he was convicted," "admitted his guilt under the term of a plea agreement," "was represented by able counsel," and "completed the full term of his sentence") (citing *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996)).)

The Government further argues that Zahid's reliance on *Honeycutt* as a basis for modifying the Restitution Order is faulty as that case addresses forfeiture orders, not restitution orders and, in any event, is not to be applied retroactively to actions seeking to collaterally challenge such orders.  (*See id.* at 5 (citing *Honeycutt*, 137 S. Ct. 1626; further citation omitted).) It also contends *coram nobis* relief is not warranted here because Zahid "has failed to show 'sound reasons for failing to seek appropriate earlier relief'" (*id.* (quoting *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014)), especially as Zahid was aware "[s]ince his guilty plea . . . that the Court's restitution order holds him accountable for a broad range of conduct."  (*Id.*)  In any event, the Government posits that since "Second Circuit law is clear that the apportionment of restitution is a matter for the discretion of the district court," there is no basis to grant Zahid's

Petition.  (*Id.* (citing, by way of example, *United States v. Nucci*, 364 F.3d 419, 422 (2d Cir. 2004)).)

Moreover, to the extent Zahid attempts to put forth an argument that his Fifth Amendment due process rights were violated because he "had a statute of limitations defense to the charges which somehow the prosecutor suppressed through fraud or by failing to produce some unnamed evidence that he alleges did not exist" (*id.* at 5 (citing Petition at 14-15)), the Government contends that argument is without merit for several reasons.  If valid, such a defense "would have been apparent as soon as [Zahid] was charged in June 2013."  (*Id.*)  Yet, Zahid has not offered any compelling reason for waiting four years from pleading guilty or three years from being sentenced before seeking *coram nobis* relief; such untimeliness, therefore, is an independent basis for denying Zahid's Petition.  (*See id.* (citing *Foont*, 93 F.3d at 80 (affirming rejection of *coram nobis* relief on timeliness grounds because petitioner "knew or should have known since the time of his conviction . . . of the facts underlying his current claim")).)  The Government further maintains that it is of no consequence "if stolen identities were not used at the specific store" at which Zahid worked in Virginia because the Government benefits from the legal presumption of Zahid's continued participation in the conspiracy, especially since Zahid has not rebutted the presumption with the offer of any evidence that he disavowed himself of same before the last overt act of his coconspirators.  (*See id.* at 6.)  Accordingly, the Government asks the Court to reject Zahid's *Brady* claim in support of his Petition.  *See id.*

III.    Discussion

A.  *The Applicable Standard*

The writ of *coram nobis* is an "extraordinary remedy" that "issues only in extreme cases."  *United States v. Denedo*, 556 U.S. 904, 916 (2009).  "Coram nobis is not a substitute for

appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *Foont*, 93 F.3d at 78 (internal quotations and alterations omitted); *see also Fleming v. United States*, 146 F.3d 88, 89-90 (2d Cir. 1998) (writ is "a remedy of last resort").  Traditionally, the writ was "available only to bring before the court factual errors 'material to the validity and regularity of the legal proceeding itself,' such as the defendant's being under age or having died before the verdict." *Carlisle v. United States*, 517 U.S. 416, 429 (1996) (quoting *United States v. Mayer*, 235 U.S. 55, 67-68 (1914)).  A writ of *coram nobis* will "issue only where extraordinary circumstances are present."  *Nicks v. United States*, 995 F.2d 161, 167 (2d Cir. 1992).

A petitioner seeking *coram nobis* relief "must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ."  *Kovac*, 744 F.3d at 49.  However, a court reviewing a *coram nobis* petition "must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner."  *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000); *see also United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018).

B.  *The Present Matter*

1.  The Waiver of Collateral Review Per the Plea Agreement

"The enforceability of an appellate waiver made 'knowingly, voluntarily, and competently' is a longstanding principle of Second Circuit law."  *United States v. Bilal*, 941 F. Supp.2d 397, 401 (S.D.N.Y. 2013) (quoting *United States v. Riggi,* 649 F.3d 143, 147 (2d Cir.2011) (internal quotation omitted); citing *United States v. Hernandez,* 242 F.3d 110, 113 (2d Cir.2001) (*per curiam*)).  So, too, are "[w]aivers of the right to collaterally attack a sentence"

enforceable. *Id.* (citing *Garcia–Santos v. United States,* 273 F.3d 506, 509 (2d Cir.2001)); *see also, e.g., United States v. Brickhouse*, No. 14-cv-963, 2017 WL 1049509, at *5-6 (S.D.N.Y. Mar. 16, 2017)(discussing enforceability of knowing and voluntary waiver of right to collateral challenge sentence).

In this instance, the Magistrate Judge thoroughly questioned Zahid about his Plea Agreement, ensuring Zahid had discussed the Agreement with his counsel and understood it, including that he was waiving certain rights, among which was the right to collaterally challenge the sentence the Court would impose upon him, and that, *inter alia*, restitution would be ordered. Before accepting Zahid's guilty plea, the Magistrate Judge conducted a thorough Criminal Rule 11 allocution of Zahid, ensuring that Zahid was knowingly and voluntarily pleading guilty. Because the record demonstrates that:

> at his allocution, [Zahid] affirmed that he (1) had discussed the case and the consequences of pleading guilty with his attorney; (2) had read and discussed the plea agreement with his attorney; (3) had discussed the Guidelines with his attorney; (4) had waived his right to appeal or otherwise challenge a within- or below-Guidelines sentence; and (5) knew that [the Court would] order restitution as part of his sentence[,] . . . his waiver of the right to challenge his sentence was knowing, voluntary, and therefore enforceable.

*Bilal*, 941 F. Supp.2d at 402.  Accordingly, Zahid's waiver of a collateral challenge to his sentence, which included ordering restitution, is valid.

Assuming, however, that Zahid's *coram nobis* Petition is not foreclosed by his waiver, the Court find his arguments would fail on the merits, *to wit*, Zahid has not: identified a fundamental error rendering the Restitution Order invalid; offered a satisfactory explanation for his many years of delay in challenging that Order; or shown that he continues to suffer legal consequences from his conviction.  *See, e.g.*, *United States v. Siwek*, No. 3:14-cr-183, 2018 WL 3404144, at *3 (D. Conn. July 12, 2018)("The burden is on the petitioner to show 1)

'circumstances compelling such action to achieve justice'; 2) 'sound reasons . . . for failure to seek appropriate earlier relief'; and (3) that the petitioner 'continues to suffer legal consequences from his conviction that may be remedied by granting of the writ.'" (quoting *Foont*, 93 F.3d at 79)); *see also United States v. Molina*, 15-cr-65(4), 2018 WL 3918178, at *2 (S.D.N.Y. Aug. 15, 2018) ("Molina's [*coram nobis*] petition fails for two independent reasons: First, he has failed to demonstrate a fundamental error rendering the Court's restitution order invalid, and second, he has failed to show sound reasons for his delay in seeking relief."). As elucidated below, this inability to demonstrate the three components comprising a petitioner's *coram nobis* burden compels the Court to deny Zahid's Petition.

### 2. The Lack of Fundamental Error

#### (a.) *Regarding the Restitution Order*

"While the Second Circuit has not explicitly held that a writ of *coram nobis* is available to challenge a restitution order in a criminal case, it has noted that the writ may be available to correct '*fundamental* errors' made in connection with a conviction." *Siwek*, 2018 WL 3404144, at *3 (quoting *Kaminski v. United States*, 339 F.3d 84, 90 (2d Cir. 2003) (emphasis in original); citing *Rutigliano*, 887 F.3d at 108 (assuming, but not deciding, that "*coram nobis* might be invoked collaterally to challenge the restitution component of a criminal sentence"); *Bilal*, 941 F. Supp.2d at 404 (construing a § 2255 motion, to the extent that it requested an amendment to a restitution order, as a petition for a writ of *coram nobis*). In *Siwek*, the court found the petitioner did not meet his burden of demonstrating that a fundamental error occurred in his criminal proceeding; hence, there was no need to "decide whether a petition for *coram nobis* [wa]s an appropriate vehicle" to amend the restitution order imposed. *Id.* The district judge reasoned, *inter alia*, that restitution was based upon the petitioner's plea with the Government, which is "a

11

process the Federal Criminal Code authorizes." *Id.* (citing 18 U.S.C. § 3663(a)(3)(the Victim Witness Protection Act ("VWPA")); *United States v. Shaw*, 446 F. App'x 357, 359 (2d Cir. 2011) (affirming restitution order that was consistent with the plea agreement)); *see also id.* at *4 (stating further that: per the plea agreement, the petitioner and Government has "stipulated to a specific amount of restitution . . . rather than leaving it to the Court to calculate the amount;" the restitution order did not implicate the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A; and, at petitioner's change of plea hearing, "the Court engaged in an extensive colloquy with [the petitioner] and his counsel . . . and made express findings that he had read and understood, and had had an adequate opportunity to discuss the plea agreement with his counsel").

Zahid's case is analogous to the *Siwek* case because Zahid has failed to show a fundamental error in the imposition of the Restitution Order.  Similar to the *Siwek* petitioner and as his brother, Farrukh, did in this criminal case, by the terms of his plea agreement, Zahid "agreed to pay [a specific amount of] restitution to 'pay the back wages of the employees described in the Indictment' pursuant to the [VWPA], 18 U.S.C. § 3663, and the [MVRA], 18 U.S.C. § 3663A." *United States v. Baig*, 654 F. App'x 26, 29 (2d Cir. June 21, 2016).  (*See* Plea Agreement, ¶(1)(e).)  Significant to the instant Petition, in rejecting Farrukh's challenge to the restitution order imposed upon him by this Court, the Circuit Court ruled that "the VWPA provides that the Court 'may also order restitution *in any criminal case to the extent agreed upon by parties in a plea agreement*.'" 18 U.S.C. § 3663(a)(3)) (emphasis in *Baig*).  Therefore, the Circuit Court did not consider whether the imposition of Farrukh's restitution order pursuant to the MVRA was proper.  *See id.*  That holding is instructive in this instance, as well, because, under the terms of his Plea Agreement, Zahid also agreed to pay restitution pursuant to the

12

VMPA; therefore, this Court "was authorized to impose restitution" and Zahid's "arguments to the contrary are unavailing." *Id.; see also Siwek,* 2018 WL 3404144, at *4 ("Though the PSR stated that the MVRA applied to [petitioner]'s conviction[] . . . , by adopting the amount the parties stipulated to in the plea agreement, the Court's restitution order fell within [the VMPA,] § 3663(a)(3)[,] and did not implicate the MVRA."). Hence, Zahid's reliance on *United States v. White*, 883 F.3d 983 (7th Cir. 2018), non-binding precedent from the Seventh Circuit, fails to support his fundamental error argument since the restitution order there was imposed pursuant to the MVRA. Given that this Court acted within its authority pursuant to the VMPA, no fundamental error is had and, accordingly, no *coram nobis* relief is warranted.

(b.)  *Regarding the Alleged <u>Brady</u> Violation*

Zahid's claim of a Fifth Amendment due process violation is unpersuasive. Contrary to his guilty plea, during which Zahid knowingly, voluntarily, and specifically admitted participating in the Farrukh-Led Scheme between 2000 and 2013, Zahid now baldly claims that his participation in the conspiracy ended in 2007 when he moved to Virginia. Such attempt to re-write history falls far short of presenting this Court with an extraordinary circumstance warranting *coram nobis* relief. *See Denedo*, 556 U.S. at 916; *Nicks*, 995 F.2d at 167. Similarly (and disregarding, *arguendo*, Zahid's admission to participation in the Farrukh-Led Scheme through 2013)), Zahid's implicit argument that he "had a statute of limitations defense to the charges which somehow the prosecutor suppressed through fraud or by failing to produce some unnamed evidence that he alleges did not exist" (Opp'n at 5 (citing Petition at 14-15)) is without merit. As the Government aptly argues, "[a]ny valid statute of limitations defense Zahid . . . had would have been apparent as soon as he was charged in June 2013," thereby giving him "ample opportunity to put the [G]overnment to its burden of proof on that ground before entering his

guilty plea on September 22, 2014." (*Id.*)  The record is devoid of any evidence that Zahid

sought "to withdraw his plea or otherwise raise the statute of limitations defense prior to

sentencing, on appeal or any time thereafter" (*id.*) and, instead, shows that Zahid "waive[d] any

right to additional disclosure from the government in connection with the guilty plea." (Plea

Agreement at 4.)  Moreover, there is little validity to Zahid's suggestion that the Government

cannot satisfy the conspiracy's statute to limitations element if the subject stolen identities were

not used at the specific Virginia store(s) where he worked. (*See, e.g.*, Petition at 9, 11.)  Rather,

as it has done, the Government must show that the subject conspiracy operated within the five-

year period before the Indictment and that Zahid was a participant in that conspiracy during that

time period. *See United States v. Salmonese*, 352 F.3d 608, 614 (2d Cir. 2003).  Zahid has not

overcome the legal presumption, which enures to the Government, *see United States v. Leslie*,

658 F.3d 140, 143 (2d Cir. 2011) ("Unless a conspirator produces affirmative evidence of

withdrawal, his participation in a conspiracy is presumed to continue until the last overt act by

any of the conspirators." (quoting *United States v. Diaz*, 176 F.3d 52, 98 (2d Cir. 1999)), that he

continued to participate in the conspiracy even after his 2007 move to Virginia and during the

five-year period preceding the Indictment.  There is no evidence of Zahid "making a clean breast

to the authorities" or communicating his abandonment "in a manner reasonably calculated to

reach co-conspirators," which would demonstrate affirmatively disavowing his criminal

association with the Farrukh-Led Scheme. *Leslie*, 658 F.3d at 143 (further citation omitted).  In

particular, Zahid's 2007 move to Virginia, without more, was not enough to demonstrate the

requisite abandonment especially considering Zahid continued to work at Farrukh Stores located

in Virginia in a managerial capacity.  In sum, Zahid has not met his heavy burden of overcoming

the presumption that the imposition of restitution was correct.  *See Rutigliano*, 887 F.3d at 108; *Mandanici*, 205 F.3d at 524.

       3.  <u>Inexplicable Delay</u>

      Zahid's reliance on the Supreme Court's 2017 *Honeycutt* decision as a sound reason for not seeking appropriate relief earlier is without weight.  *See Honeycutt*, 137 S. Ct. 1626. Notwithstanding that the *Honeycutt* decision was issued after the imposition of Zahid's Restitution Order, because of its inapplicability to restitution orders, it does not provide a compelling reason for Zahid's delay in seeking earlier relief.  In *Honeycutt*, the Supreme Court addressed whether, pursuant to 21 U.S.C. § 853, which provides for criminal forfeiture of certain properties involved in drug manufacturing and distribution crimes, a court may impose a forfeiture order jointly and severally upon a co-conspirator; based upon that statute's language, the Supreme Court held that a defendant may not be held "jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire."  *Id.* at 1630; *see also id.* at 1632 (holding 21 U.S.C. § 853(a) limited forfeiture to "tainted property; that is, property flowing from, or used in, the crime itself."); *United States v. Gioeli*, No. 08-cr-240, 2019 WL 6173421, at *2 (E.D.N.Y. Nov. 20, 2019)("The *Honeycutt* Court found joint and several liability to be[:] 'inconsistent with the statute's text and structure,' as well as its legislative history;" "contrary to other provisions in section 853;" and, *inter alia*, "inconsistent with traditional forfeiture laws.")

      Zahid's Restitution Order was not imposed pursuant to 21 U.S.C. § 853, or a similarly worded statute, making *Honeycutt* inapposite.  Moreover, *Honeycutt* provides no basis for Zahid's requested modification of the Restitution Order because "[f]orfeiture and restitution are separate remedies with different purposes," with "[t]he purpose of restitution [being] to

compensate victims for their losses." *United States v. Pescatore*, 637 F.3d 128, 137, 138 (2d Cir. 2011) (citations omitted)). Indeed, joint and several liability for restitution to victims is clearly authorized by statute. *See* 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."). *Cf., e.g.*, *United States v. Steel*, No. 11-cr-244, 2012 WL 5879143, at *1 (E.D.N.Y. Nov. 21, 2012) (recognizing the interplay between forfeiture and restitution, but noting their different purposes and stating the "remedies are authorized by separate statutes, and their simultaneous imposition offends no constitutional provision" (quoting *United States v. Kalish,* 626 F.3d 165, 169 (2d Cir.2010))). (*See also* Opp'n at 4 (arguing "the Second Circuit has upheld jointly- and severally-imposed restitution in the same opinion as it has vacated a joint and several forfeiture order under *Honeycutt*, [thereby] implicitly recognizing that [*Honeycutt*] i[s] inapplicable to restitution orders" (citing *United States v. Fiumano*, 721 F. App'x 45, 48 (2d. Cir. Jan. 23, 2018)).) Even if that were not so, since *Honeycutt*'s holding is not retroactive, as Zahid would have this Court find, the Court further rejects Zahid's reliance upon it as a basis for modifying his Restitution Order. *See Gioeli*, 2019 WL 6173421, at *3 ("*Honeycutt* does not apply retroactively.") (collecting cases); *cf.*, *Tyler v. Cain*, 533 U.S. 656, 663 (2001) ("A new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive."). Since *Honeycutt* does not support his position and he has not offered any other compelling reason for the delay in seeking relief from the Restitution Order, Zahid cannot meet the second component of his *coram nobis* burden.

4. Lack of Showing Continued Suffering

Finally, the Court finds Zahid has not shown that he is continuing to suffer a legal consequence from his conviction.  *See, e.g.*, *Kovac*, 744 F.3d at 49 (concluding that petitioner's "likely ineligibility to reenter the United States constitute[d] a continuing consequence of his conviction"); *United States v. Hernandez*, 283 F. Supp.3d 144, 154 (S.D.N.Y. 2018)(finding petitioner's imminent deportation satisfied her burden of establishing the "continuing to suffer" prong of the *coram nobis* test).  Zahid proffers the Court's Restraining Order as the source of the legal consequence from which he allegedly continues to suffer.  (*See* Petition at 9-10.)  Not so. The Restraining Order compels the 7-Eleven Corporation to refrain from distributing payments to the franchisees of twelve (12) Farrukh Stores until further ordered by the Court.  (*See* Restraining Order, ¶¶1-2.)  Because Zahid does not own any 7-Eleven stores, let alone any of those identified in the Restraining Order, that Order has no legal consequence upon him.  At most, Zahid implies he suffers a possible, derivative, financial consequence from the Restraining Order since his wife, Shagufta, owns one of the stores which is subject to that order.  (*See* Petition at 3, 4, 6.)  However, speculation that Zahid would be benefitting financially from proceeds Shagufta could be receiving from the 7-Eleven Corporation, but for the Restraining Order, does not satisfy Zahid's burden of demonstrating that he is continuing to suffer a legal consequence from his conviction.  Zahid's inability to make this requisite showing is another reason why his *coram nobis* Petition must be denied.

In sum, as Zahid is unable to meet his burden of establishing the three prongs of the *coram nobis* test, *cf.*, *e.g.*, Kovacs, 744 F.3d 44, *with* **Siwek**, 2018 WL 3404144, at *5; *Molina*, 2018 WL 3918178, at *2, he is not entitled to the *coram nobis* relief he seeks.

5.  Request for an Accounting

In addition, Zahid requests an accounting of all the payments made towards the

"modified restitution order and judgment in the amount of $1,252,342.48" to determine whether

it has been "fully-satisfied."  (*See* Petition at 10; *cf.*, Appendix A (ECF No. 214-2),[5] *attached to*

Judgment (ECF No. 214); *see also* Judgment at 5 ("Restitution shall be distributed to the victims

as set forth in the sealed Appendix A associated with this order.").)  The Government has not

responded to this request.

As a preliminary matter, the Court notes that the requested accounting is not warranted

by means of a writ of *coram nobis*.  Nonetheless, in the interest of justice, the Court now

considers this request.  While the relevant statutory authority regarding the procedures for

issuing and enforcing restitution orders does not directly address a court's authority to order the

---

[5]  The referenced "Appendix A" is the same "Appendix A" the Government attached to its
Sentencing Memorandum (*see* ECF No. 197; ECF No. 197-1 (Appendix A)), which identifies the
conspiracy's victims and the amounts due to each of them, totaling $1,253,343.48.  This total
amount was the updated restitution amount the Government requested the Court impose upon
Zahid instead of the initial, agreed-upon $2,621,111.97 restitution amount.  (*See* Sentencing
Memorandum at 6 (Part VIII).)  It is also the same total amount of restitution the Government
sought from Shannawaz, who was comparably culpable with Zahid for his participation in
Farrukh-Led Scheme.  (*See* Sentencing Memorandum regarding Shannawaz (ECF No. 208) at 1
("in most respects, Sha[n]nawaz Baig's circumstances are very similar to those of Zahid Baig");
*see also* ECF No. 208-1 (submitting the same Appendix A in support of the restitution amount
sought to be imposed upon Shannawaz as Government sought to be imposed upon Zahid).)
Consistent with the Government's request as to Zahid, the Probation Department stated, "[t]he
Government also puts forth a new, more recently calculated restitution amount[,] . . .
$1,253,343.48," to which it had no objections.  (PSR Addendum (ECF No. 200) at 1.)  By its
incorporation of Appendix A into Zahid's Judgment, the Court implicitly adopted the
Government's proposed, updated calculations of each victim's losses as its determination of
same.  *See, e.g.*, 18 U.S.C. § 3364(e)("The burden of demonstrating the amount of the loss
sustained by a victim as a result of the offense shall be on the attorney for the Government."); 18
U.S.C. § 3664(f)(1)(A) ("In each order of restitution, the court shall order restitution to each
victim in the full amount of each victim's losses as determined by the court and without
consideration of the economic circumstances of the defendant.").  Throughout the instant
Petition, Zahid has stated the amount of restitution he is ordered to pay is $1,253,343.48, and
nowhere in its Opposition has the Government interposed any objection to that stated amount.

requested accounting, *see* 18 U.S.C. § 3664, as a corollary to its authority to, *inter alia*, adjust the payment schedule for a restitution order "as the interests of justice require," § 3664(k), especially since "persons subject to restitution orders are entitled to know, as they led their lives and make economic decisions over the long duration of restitution orders, the extent of their remaining restitution obligations," *United States v. Yalincak*, 853 F.3d 629, 639 (2d Cir. 2017) (addressing motions seeking determinations regarding credits towards restitution orders pursuant to § 3664(k)), it is not improper for the Court to grant Zahid's accounting request.  Of import, since Zahid is jointly and severally liable to repay the victims, and it has been approximately five years since restitution orders have been imposed upon him and his co-defendants, the subject victims may have been, or are near to being, compensated for their losses.  It is not unreasonable that Zahid know the extent of his remaining restitution obligation; nor is it prejudicial to the Government to provide the requested accounting since it is authorized to enforce Zahid's Restitution Order and that of his co-defendants, *see, e.g.*, § 3664(m)(1)(A).

\* \* \*

The Court has considered Zahid's remaining arguments and finds them to be without merit.

IV.   Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Zahid Baig's Petition is denied; but

**IT IS FURTHER ORDERED** that, within 60 days of the date of this Order, the Government shall:  provide Zahid with an accounting of the payments made to the victims he is obligated to compensate such that he can determine his outstanding obligation on the Restitution Order; and, file proof of service of said accounting.

SO ORDERED this 11th day of August 2020 at Central Islip, New York.

/s/  *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge

19